# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DEBRA HESSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00472-RK |
| | ) |
| MISSOURI DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Missouri Department of Corrections ("MDOC")'s motion to dismiss Plaintiff's complaint. (Doc. 6.) The motion is fully briefed. (Docs. 7, 9, 11.) Defendant argues Plaintiff's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it is barred by the doctrine of res judicata. After careful consideration and for the reasons explained below, Defendant's motion to dismiss Plaintiff's claims as barred by res judicata is **GRANTED in part** and **DENIED in part**. Only Plaintiff's claim for unlawful termination in January of 2020 survives res judicata.

### I. Background[1]

Plaintiff filed this complaint against Defendant on July 6, 2021, asserting claims under Title VII, 42 U.S.C. § 2000e. (Doc. 1.) As best as the Court can discern, Plaintiff asserts two claims: (1) a claim of sex or gender discrimination, and (2) a claim for wrongful discharge/termination. (*See* Doc. 1 at 9-11.)

In 2016, Plaintiff was employed by MDOC as a corrections officer at the Kansas City Reentry Center. (*Id.* at ¶ 12.) While she was employed as a corrections officer, Plaintiff filed a lawsuit in state court against MDOC alleging gender discrimination and retaliation under the Missouri Human Rights Act. Plaintiff and a co-worker, Tina Gallego, both testified at trial in support of Plaintiff's lawsuit against MDOC. (*Id.* at ¶ 14.) On January 20, 2016, the jury returned a verdict finding in Plaintiff's favor. (*Id.* at ¶ 13.)

---

[1] In considering Defendant's motion to dismiss Plaintiff's complaint at this early stage, the Court takes the facts pleaded in Plaintiff's complaint as true and construes them in the light most favorable to Plaintiff as the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

In the instant complaint, Plaintiff alleges that when Ms. Gallego returned to work after having testified in support of Plaintiff's 2016 lawsuit, Ms. Gallego was forced to meet with an investigator to whom she provided "specific details regarding the sexual harassment and retaliation," including the names of the male employees who engaged in the unlawful practices or behavior including grabbing female employees and making sexually explicit comments, as well as witnesses. (*Id.* at ¶ 16.) In addition, Plaintiff alleges that Ms. Gallego was retaliated against after testifying in Plaintiff's trial when other male employees refused to work or interact with her and "bumped" into her. (*Id.* at ¶ 17.) Further, Plaintiff alleges inmates warned Ms. Gallego after they overheard male employees (identified as "Lawrence, Edwards, and Bryan") "talking some real shit on [Ms. Gallego]" including that they were "pissed" and that Ms. Gallego needed to "watch her back." (*Id.*) Plaintiff believed the threats concerning Ms. Gallego were also directed at her. (*Id.* at ¶ 18.) Plaintiff alleges the harassment and discrimination Ms. Gallego suffered after testifying at Plaintiff's 2016 trial was the same as Plaintiff had experienced prior to the 2016 trial. (*Id.*)

On January 23, 2016, Plaintiff submitted written complaints about the harassment and retaliation she and Ms. Gallego suffered following the 2016 trial. (*Id.* at ¶ 20.) After doing so, Plaintiff was placed on leave. (*Id.* at ¶ 21.) She remained employed by Defendant, however, until she was eventually terminated effective January 27, 2020. (*Id.* at ¶ 1.)

At the same time, the male employees Plaintiff had complained about – identified as "Lawrence, Bryan, and Edwards" – were not placed on leave and instead continued their employment with Defendant as "active employees." (*Id.* at ¶¶ 21, 25.) In February 2016, while Plaintiff was on leave, these three employees continued to talk about the 2016 trial and called Plaintiff and Ms. Gallego "snitches." (*Id.* at ¶ 31.) Plaintiff alleges their conduct "put Plaintiff and [Ms.] Gallego in danger" and made them a "target for all inmates." (*Id.* at ¶ 32.)

On February 16, 2016, a male employee, Jacob Timbers, filed a complaint against the same three employees that "mirrored" Plaintiff's earlier complaints about them. (*Id.* at ¶ 26.) Unlike Plaintiff, however, Mr. Timbers was not placed on leave after filing his complaint, although this time the three male employees who were the subjects of the complaints were placed on leave. (*Id.* at ¶ 27.) Defendant did not communicate to Plaintiff that these male employees had been placed on leave, however, and "did not offer Plaintiff her employment position back" at that time. (*Id.* at ¶ 28.) Plaintiff alleges Defendant's "fail[ure] to reinstate Plaintiff's employment after Lawrence, Bryan, and Edwards were placed on leave was a discriminatory action based on Plaintiff's gender

2

and was in retaliation for Plaintiff's testimony at trial and her January 23, 2016 complaints." (*Id.* at ¶ 29.)

While Plaintiff was on leave, an investigation was conducted[2] during which Defendant did not turn over Plaintiff's written complaints concerning the sexual harassment, although they were requested as part of that investigation. (*Id.* at ¶ 33.) Plaintiff also alleges two of her superiors "falsely denied ever receiving a complaint from Plaintiff" during the course of this investigation. (*Id.* at ¶ 34.) Ultimately, the investigation "showed that Lawrence, Bryan and Edwards had retaliated against Plaintiff" and put Plaintiff's life in danger in the prison environment because they "would refuse to assist a guard in danger and would say things to prisoners to entice them." (*Id.* at ¶¶ 35, 36.) Plaintiff was not notified of the findings of the investigation or what remedial action, if any, would be taken as a result of the investigation. (*Id.* at ¶ 37.)

Plaintiff alleges "[a]t no point prior to July 2016 did Defendant offer Plaintiff the option to return to her employment position, even though Defendant knew that Lawrence, Bryan or Edwards were no longer employed by Defendant." (*Id.* at ¶ 38.) On July 27, 2016, Plaintiff received notification her leave would end on August 1, 2016. (*Id.* at ¶ 39.) In this communication, Defendant stated a "thorough investigation" had found "all KCRC staff 'are performing their duties professionally.'" (*Id.*) Plaintiff alleges Defendant thus "falsely maintained that Plaintiff had filed an unwarranted complaint," even knowing that as a result of the investigation, two employees had been terminated and a third had resigned. (*Id.*) Plaintiff believed "she was asked to come back to work to put her in harm's way" and that if she returned "she would have been targeted just like Tina Gallego" if she were to return to work. (*Id.* at ¶ 41.) Specifically, Plaintiff alleges on August 9, 2016, Ms. Gallego was required to work her shift without having access to keys for any building. (*Id.* at ¶ 42.) Moreover, Plaintiff alleges that on the same day Ms. Gallego became sick to her stomach, her feet and ankles began to sting, and her legs became swollen after she drank from an open can of soda she had left on her desk while meeting with a lieutenant. (*Id.*) Plaintiff alleges a doctor stated Ms. Gallego's symptoms were inconsistent with a virus or stomach illness but were "consistent with poisoning." (*Id.* at ¶ 43.)

---

[2] It is not clear from Plaintiff's complaint by or for whom the investigation was conducted. Plaintiff only alleges "an investigation was conducted by Ann Malloy" and that a subsequent communication from Defendant to Plaintiff referred to a "thorough investigation" that had been conducted. (Doc. 1 at ¶¶ 33, 39.)

3

On November 20, 2017, Plaintiff filed a second lawsuit in state court against MDOC alleging claims of sex discrimination, hostile work environment, retaliation, and constructive discharge. (*Id.* at ¶ 46.) This second lawsuit was dismissed with prejudice on December 6, 2018.[3] (*Id.*)

Plaintiff's employment with MDOC was finally terminated effective January 27, 2020. (*Id.* at ¶ 47.)

In her complaint filed in this case, Plaintiff alleges first that "[d]uring the course of [her] employment with the Defendant, Plaintiff was subjected to a pattern and practice of intentional discrimination based on sex and sex discrimination in violation of 42 U.S.C. § 2000e-2(a) and § 2000e-3(a) which was continuing up to her wrongful termination." (*Id.* at ¶ 49.) Second, Plaintiff alleges she was wrongfully terminated and that her "sex or complaint of harassment, and/or filing of a Petition against Defendant, was a motivating factor" in her termination. (*Id.* at ¶¶ 62, 63.)

## II. Legal Standard

The federal pleading rules provide that a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may challenge a pleading's legal sufficiency in a motion to dismiss. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

---

[3] Specifically, the Jackson County Circuit Court held that Plaintiff's claims for gender discrimination/sexual harassment that accrued before January 20, 2016, were barred by res judicata and that no claims of harassment accrued after January 21, 2016, "because Plaintiff was not present in the work environment" after that date. (*See* Doc. 7-4 at 3 & 4.) Additionally, the court found that Plaintiff's claim for retaliation (based on Plaintiff's being placed on leave) and constructive discharge were statutorily barred. (*See id.* at 5 & 6.)

## III. Discussion

In its motion to dismiss, Defendant argues Plaintiff's complaint is barred by res judicata because Plaintiff has previously litigated these issues in the 2016 and 2017 litigation.[4] Res judicata, an affirmative defense, supports a motion to dismiss for failure to state a claim when it "is apparent on the face of the complaint" that the defense applies. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012) (citations and quotation marks omitted).[5] "The law of the forum that rendered the first judgment controls the res judicata analysis." *Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (citation and quotation marks omitted); *see also Medvick v. City of Univ. City, Mo.*, 995 F.2d 857, 858 (8th Cir. 1993) (explaining that under 28 U.S.C. § 1738, federal courts must give preclusive effect to state court judgments when such preclusion applies under state law). Thus, the Court looks to Missouri law to determine whether the 2016 and 2017 litigation bars Plaintiff's claims here under the doctrine of res judicata.

In Missouri, the doctrine of res judicata "operates as a bar to the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties." *Lauber-Clayton, LLC v. Novus Props. Co.*, 407 S.W.3d 612, 618 (Mo. Ct. App. 2013) (citations omitted); *accord Jordan v. Kansas City*, 929 S.W.2d 882, 885 (Mo. Ct. App. 1996) ("The doctrine [of res judicata] is based upon the principle that a party should not be able to relitigate, in a second proceeding, a claim which was, or which should have been, litigated in a previous proceeding.")

---

[4] The Court also notes that in its reply brief Defendant argued that Plaintiff's complaint also fails to state a claim for discrimination or retaliation based on her actual termination. The Court does not consider this argument here, however, because it was raised for the first time in Defendant's reply brief. *See O'Saughnessy v. McClatchy Co.*, No. 4:13-cv-00492-DGK, 2013 WL 12203246, at *1 n.1 (W.D. Mo. July 17, 2013).

[5] As a general rule, courts do not consider "matters outside the pleadings" in ruling on a motion to dismiss. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (citations omitted). Additionally, when a defendant – as MDOC has here – relies on an affirmative defense to support its motion to dismiss under Rule 12(b)(6), the Court must look to the "face of the complaint" to determine whether the complaint must be dismissed. *C.H. Robinson Worldwide*, 695 F.3d at 764 (citation and quotation marks omitted). In either case, the Eighth Circuit has explained that courts may properly consider "public records and material embraced by the complaint" or "materials attached to the complaint." *Id.* (citation and quotation marks omitted); *see Enervations*, 380 F.3d at 1069 (courts may consider "documents 'necessarily embraced by the complaint'") (citations omitted). In addition, courts may take judicial notice of state court records in deciding a motion to dismiss. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *Cheeks v. Belmar*, No. 4:18-cv-2091-SEP, 2020 WL 5569982, at *3 n.4 (E.D. Mo. Sept. 17, 2020). For these reasons, the Court may consider matters of public record concerning Plaintiff's prior lawsuits against Defendant including the petitions and judgments or orders. The Court also notes that Plaintiff submitted the petitions and judgments in the prior litigation as attachments to her suggestions in opposition to Defendant's motion to dismiss. (*See* Docs. 7-1, 7-2, 7-3, and 7-4.)

(citation omitted). Missouri courts apply the doctrine of res judicata to a subsequent action if the following four identities are satisfied as to the prior and subsequent actions: "(1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made." *Lauber-Clayton*, 407 S.W.3d at 618. In addition, "a final judgment on the merits must have been rendered in the underlying action." *Jordan*, 929 S.W.2d at 885.

In the 2016 litigation, Plaintiff pursued claims against MDOC including sex discrimination, retaliation, and hostile work environment under the Missouri Human Rights Act. (*See* Doc. 7-1); *Hesse v. Mo. Dep't of Corr.*, 1416-CV07836 (Cir. Ct. Jackson Cty., Mo.). After a trial, the jury returned a verdict in Plaintiff's favor on her claim for harassment based on gender and awarded compensatory and punitive damages as well as attorney's fees and costs. (*See* Doc. 7-2.) In the 2017 litigation, the second lawsuit, Plaintiff again alleged claims of gender discrimination and sexual harassment, retaliation, and constructive discharge against MDOC under the Missouri Human Rights Act, largely for conduct occurring after the January 2016 trial. (*See* Doc. 7-3); *Hesse v. Mo. Dep't of Corr.*, 1716-CV28637 (Cir. Ct. Jackson Cty., Mo.). On December 6, 2018, the Jackson County Circuit Court entered a "Judgment/Order" granting MDOC's motion to dismiss Plaintiff's complaint in that case and dismissed the case with prejudice. (*See* Doc. 7-4.)

As Defendant argues – and Plaintiff does not otherwise contest in her opposition – both the 2016 and 2017 litigation reached a final judgment on the merits: the former by judgment entered upon a jury verdict being reached, and the latter resulting in a dismissal with prejudice of Plaintiff's case.[6] Additionally, it is clear all three lawsuits involve the same parties (Ms. Hesse and MDOC) with Ms. Hesse as plaintiff and MDOC as defendant; satisfying the third and fourth identities under the res judicata framework. *See also Steinbach v. Maxion Wheels Sedalia LLC*, __ S.W.3d __, 2021 WL 5056746, at *5 (Mo. Ct. App. Nov. 2, 2021).

As to the two final factors – "identity of the thing sued for" and "identity of the cause of action" – the Missouri Court of Appeals has explained the critical inquiry is "whether the 'operative facts' – those facts that give rise to an enforceable right and a basis for the lawsuit – are

---

[6] *See also* Mo. Rev. Stat. § 510.150 ("A dismissal with prejudice operates as an adjudication upon the merits."); Mo. Sup. Ct. Rule 67.01 ("A dismissal with prejudice bars the assertion of the same cause of action or claim against the same party.")

6

the same as the previous lawsuit." *Epice Corp. v. Land Reutilization Auth. of City of St. Louis*, 608 S.W.3d 725, 730 (Mo. Ct. App. 2020) (quoting *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318 (Mo. banc 2002)) (other citation omitted). In other words, a subsequent claim is barred by the doctrine of res judicata when it "arises out of the same act, contract or transaction" as the previously decided claim. *Id.* (quoting *Chesterfield*, 64 S.W.3d at 318). "In order for a subsequent claim on the same transaction to be considered separate [and therefore not be barred by res judicata] there must be new ultimate facts . . . that form a new claim for relief." *Friday v. McClure*, 536 S.W.3d 235, 240-41 (Mo. Ct. App. 2017) (citation and quotation marks omitted).

The "thing" Plaintiff sued for in each of these three cases was ultimately the same: the redress of unlawful and discriminatory employment practices against Plaintiff as an employee of Defendant MDOC. *See Palmore v. City of Pacific*, 393 S.W.3d 657, 665 (Mo. Ct. App. 2013). And in fact, other than her January 2020 termination from employment with Defendant which had not yet occurred, the factual assertions in the earlier 2017 litigation and this case are virtually identical. (*Compare* Docs. 1 at ¶¶ 12-47; 7-3 at ¶¶ 9-47.)

In the 2017 litigation, Plaintiff asserted a claim for constructive discharge based on her being placed on leave after filing the written complaint. In the instant case, Plaintiff now asserts a claim of unlawful discharge based on her January 2020 termination from employment with MDOC. Nonetheless, Defendant argues, without citation to any legal authority, that "constructive termination" (presumably based on Plaintiff's having been placed on leave for some period of time) is "essentially the same" as "actual termination." Specifically, Defendant argues that "[b]oth have the same effect: Plaintiff no longer worked for the MDOC and was suing based on her lack of employment." (Docs. 7 at 6; 11 at 1.)

The Court is not aware of any legal authority to support the proposition that being placed on leave is functionally the same as termination of employment such that a claim for constructive termination may bar a subsequent lawsuit based on that employee's actual termination as res judicata. Rather, the Court finds Plaintiff's January 2020 termination constitutes a "new ultimate fact" that establishes a "new claim for relief" that did not exist in the earlier 2017 litigation. *See also Boehlein v. Crawford*, 605 S.W.3d 135, 142 (Mo. Ct. App. 2020) ("To constitute 'new' ultimate facts, those facts that form the basis of a new claim for relief must be unknown to plaintiff or yet-to-occur at the time of the first action.") (citation omitted); *cf. id.* (holding claims barred as res judicata because "all three of [plaintiff]'s claims are based entirely on facts known by [plaintiff]

7

and which had already occurred prior to the filing, settlement, and dismissal with prejudice of the [earlier] partition action").

Accordingly, the Court does not find Plaintiff's claim for unlawful termination based on her January 2020 termination from employment with MDOC is barred by res judicata. Therefore, Defendant's motion to dismiss (Doc. 6) is **DENIED** as to Plaintiff's January 2020 unlawful termination claim and is otherwise **GRANTED**.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 16, 2022